IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

WILLIAM M. ZWACK,

       Plaintiff,

vs.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

       Defendant.

No. C09-0120

RULING ON JUDICIAL REVIEW

_____

**TABLE OF CONTENTS**

*I.*     *INTRODUCTION.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*II.*    *PROCEDURAL BACKGROUND.* . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*III.*   *PRINCIPLES OF REVIEW.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*IV.*   *FACTS.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
     *A.*    *Zwack's Education and Employment Background.* . . . . . . . . . . . . . 5
     *B.*    *Administrative Hearing Testimony.* . . . . . . . . . . . . . . . . . . . . . . . 5
          *1.*    *Zwack's Testimony.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
          *2.*    *Vocational Expert's Testimony.* . . . . . . . . . . . . . . . . . . . 8
     *C.*    *Zwack's Medical History.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*V.*     *CONCLUSIONS OF LAW.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
     *A.*    *ALJ's Disability Determination.* . . . . . . . . . . . . . . . . . . . . . . . . 15
     *B.*    *Objections Raised By Claimant.* . . . . . . . . . . . . . . . . . . . . . . . . 17
          *1.*    *Medical Evidence.* . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
          *2.*    *Credibility Determination.* . . . . . . . . . . . . . . . . . . . . . 20
     *C.*    *Reversal or Remand.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*VI.*   *CONCLUSION.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*VII.*  *ORDER.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

## I. INTRODUCTION

This matter comes before the Court on the Complaint (docket number 3) filed by Plaintiff William M. Zwack on August 25, 2009, requesting judicial review of the Social Security Commissioner's decision to deny his applications for Title II disability insurance benefits and Title XVI supplemental security income ("SSI") benefits. Zwack asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide him disability insurance benefits and SSI benefits. In the alternative, Zwack requests the Court to remand this matter for further proceedings.

## II. PROCEDURAL BACKGROUND

On June 1, 2006, Zwack applied for both disability insurance benefits and SSI benefits.[1] In his applications, Zwack alleged an inability to work since December 9, 2003 due to psoriasis, back pain, and social phobia. Zwack's applications were denied on September 13, 2006. On February 8, 2007, Zwack's applications were denied on reconsideration. On March 7, 2007, Zwack requested an administrative hearing before an Administrative Law Judge ("ALJ"). On October 27, 2008, Zwack appeared via video conference with his attorney before ALJ Debra Bice for an administrative hearing. Zwack, Barbara Steffenmeier, Zwack's sister, and vocational expert Julie A. Svec testified at the hearing. In a decision dated February 9, 2009, the ALJ denied Zwack's claims. The ALJ determined that Zwack was not disabled and not entitled to disability insurance benefits or SSI benefits because he was functionally capable of performing other work that exists in significant numbers in the national economy. Zwack appealed the ALJ's decision.

---

[1] In addition to his 2006 applications for disability benefits and SSI benefits, the record shows that Zwack applied for disability insurance benefits and SSI benefits in January 2004. Zwack's applications were denied on March 5, 2004. *See* Administrative Record at 79-80. Apparently, Zwack chose not to further pursue the 2004 applications because the record contains nothing further regarding those applications.

On June 23, 2009, the Appeals Council denied Zwack's request for review. Consequently, the ALJ's February 9, 2009 decision was adopted as the Commissioner's final decision.

On August 25, 2009, Zwack filed this action for judicial review. The Commissioner filed an Answer on November 24, 2009. On January 31, 2010, Zwack filed a brief arguing that there is not substantial evidence in the record to support the ALJ's finding that he is not disabled and that he could perform other work that exists in significant numbers in the national economy. On April 1, 2010, the Commissioner filed a responsive brief arguing that the ALJ's decision was correct and asking the Court to affirm the ALJ's decision. On January 6, 2010, both parties consented to proceed before a magistrate judge in this matter pursuant to the provisions set forth in 28 U.S.C. § 636(c).

### III. PRINCIPLES OF REVIEW

Title 42, United States Code, Section 405(g) provides that the Commissioner's final determination following an administrative hearing not to award disability insurance benefits is subject to judicial review. 42 U.S.C. § 405(g). Pursuant to 42 U.S.C. § 1383(c)(3), the Commissioner's final determination after an administrative hearing not to award SSI benefits is subject to judicial review to the same extent as provided in 42 U.S.C. § 405(g). 42 U.S.C. § 1383(c)(3). 42 U.S.C. § 405(g) provides the Court with the power to: "[E]nter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ." *Id*.

The Court will "affirm the ALJ's decision 'if the ALJ's findings are supported by substantial evidence on the record as a whole[.]'" *Owen v. Astrue*, 551 F.3d 792, 798 (8th Cir. 2008) (quoting *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007)). Evidence is "substantial evidence" if a reasonable person would find it adequate to support the ALJ's determination. *Wiese v. Astrue*, 552 F.3d 728, 730 (8th Cir. 2009) (citing *Eichelberger v. Barnhart*, 390 F.3d 584, 589 (8th Cir. 2004)); *see also Moore v. Astrue*, 572 F.3d 520,

522 (8th Cir. 2009) ("'Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion.' *Lewis v. Barnhart*, 353 F.3d 642, 645 (8th Cir. 2003).").

In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citing *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005)). The Court not only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Wagner*, 499 F.3d at 848 (citing *Bowman v. Barnhart*, 310 F.3d 1080, 1083 (8th Cir. 2002)). In *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994), the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is 'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'

*Id.* (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991), in turn quoting *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988)). In *Casey v. Astrue*, 503 F.3d 687 (8th Cir. 2007), the Eighth Circuit further explained that a court "will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" *Id.* at 691 (citations omitted). "A decision is not outside that 'zone of choice' simply because [a court] may have reached a different conclusion had [the court] been the fact finder in the first instance." *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006). Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams*, 393 F.3d at 801 (citing *Chamberlain v. Shalala*, 47 F.3d 1489, 1493 (8th Cir. 1995)); *see also Moore*, 572 F.3d at 522 ("'If there is substantial evidence to support the Commissioner's conclusion, we may not reverse even though there may also be substantial evidence to support the opposite conclusion.' *Clay v. Barnhart*, 417 F.3d 922, 928 (8th

4

Cir. 2005)."); *Holley v. Massanari*, 253 F.3d 1088, 1091 (8th Cir. 2001) ("As long as substantial evidence in the record supports the Commissioner's decision, we may not reverse it either because substantial evidence exists in the record that would have supported a contrary outcome, or because we would have decided the case differently.").

## IV. FACTS

### A. Zwack's Education and Employment Background

Zwack was born in 1966. He is a high school graduate.[2] He also took some classes at Kirkwood Community College in Cedar Rapids, Iowa. Zwack explained his studies at Kirkwood, as follows:

> Q: Okay. What were you studying at Kirkwood?
> A: Oh, I was just taking classes to see what [] I, I could possibly do as far as a career. And I took like a history class -- let's see -- art. I signed up for a lot of classes. But a lot of classes I, I dropped because once I got the syllabus, if it was required for me to give a speech in that class, I immediately dropped it because I knew I wasn't going to be able to do it. . . .

(Administrative Record at 35.)

The record contains a detailed earnings report for Zwack. The report covers Zwack's employment history from 1981 to 2008. According to the report, Zwack's earnings started in 1983. Zwack had a range of earnings from 1983 to 2006, with a low of $283.26 (1994) and a high of $27,122.32 (2003). Zwack had no earnings in 2007 and 2008.

### B. Administrative Hearing Testimony

#### 1. Zwack's Testimony

At the administrative hearing, the ALJ noted that Zwack had worked as a nurse's aid, retail clerk, and telemarketer. The ALJ asked Zwack whether he had any difficulties

---

[2] According to Zwack, "I barely graduated from high school, but I was able to with one credit[;] had to go back after everybody graduated to finish some credits." *See* Administrative Record at 35.

performing those jobs. Zwack responded that the retail clerk position was difficult for him because he suffered panic attacks when dealing with customers at the cash register. Zwack testified that he had less difficulty in the nurse's aid position because he worked third-shift and only had two co-workers; thus, lessening his problems with panic attacks. As for the telemarketer position, Zwack stated that it was difficult "just having to . . . talk to people, even though I, I can't see the person. . . . Just interacting with people over the phone can be a bad situation. The anxiety that I feel. The panic attacks aren't as severe because I can't, I can't see them. . . ."[3]

Next, the ALJ asked Zwack besides anxiety and panic attacks, whether he had any other difficulties which made working problematic for him. Zwack stated that he had difficulty standing for long periods and lifting "anything" due to low back pain. Zwack further stated that he had difficulty with paranoia which was different from his difficulties with anxiety. Specifically, Zwack testified that:

> Q: Is the paranoia different than the anxiety?
> A: I think it's kind of a separate thing. If I'm out, like if I'm outside, if I go out to the mailbox to get the mail for my sister. I mean, I feel like the neighbors are watching me. My therapist suggested that you know, you exercise. Of course exercise is good for the body, and I agree. But go out and run, walk around the block. But I feel like if I go out everybody is going to be watching me from out the window. That's basically the extent of my paranoia. If I'm out in public I just, I feel like I'm constantly being watched.

(Administrative Record at 46.)

Zwack lives with his sister and her family, and the ALJ asked Zwack whether he does anything to help out around the house. Zwack replied that he empties the dishwasher, folds laundry, vacuums, and performs other light housecleaning chores "until his back

---

[3] *See* Administrative Record at 39.

starts to hurt."[4] Zwack also indicated that he occasionally watches his sister's children and picks them up from school. Zwack's other activities during a typical day include reading and watching television. According to Zwack, any shopping he does is done early in the morning to avoid large crowds of people.

Next, the ALJ asked Zwack several questions about his functional capabilities:

Q: Okay. You mentioned that you have pain with sitting. About how long [] can you sit at one time before you get pain?

A: Oh, I'd say about -- it, it, it depends on what I'm [d]oing. It depends on what my arms are doing.

Q: Uh-huh.

A: It just seems like if I'm doing something with my arms, like if I'm -- if I happen to be writing something or if I'm typing on the computer. It can be you know, 10, 15 minutes. But for something like this, maybe -- well, not that I'm doing anything with my arms, 45 minutes possibly.

Q: Uh-huh. And [how] about any problems standing?

A: Yes.

Q: And how long can you stand?

A: Well, that, I notice that after about maybe -- boy -- 10 minutes --

Q: Uh-huh.

A: -- I'll start to get the pain in my lower back.

Q: Uh-huh.

A: And then it just kind of radiates, radiates around to both sides of my hips. And then it starts to radiate down into my left leg. . . .

Q: Okay. And about how long --

A: So --

Q: -- do you walk?

A: Oh, I don't know, because I told you a lot of walking. I don't know. That's a good question.

Q: How much can you lift?

A: Oh, boy. Probably no more than -- well, about 10 pounds, five or 10 pounds maybe. Again, I, I avoid

---

[4] *See* Administrative Record at 47.

those things that I know are going to aggravate and
make it worse.

Q:  What about lifting a gallon of milk?

A:  I could do that.

(Administrative Record at 56-57.) Due to Zwack's difficulties with sitting, standing, and walking, the ALJ inquired what position Zwack was in most of the day. Zwack answered that he spent his day "[m]ostly lying down in bed."[5] Zwack testified that he laid in bed about 12 to 16 hours each day depending on how he slept the night before. Zwack noted that he did not lie down for 12 to 16 hours straight, but got up periodically to do chores around the house.

### 2.  *Vocational Expert's Testimony*

At the hearing, the ALJ provided vocational expert Julie A. Svec with a hypothetical for an individual who is able to perform:

> medium work as defined by the Secretary. Further this
> individual is -- has additional limitations in that he cannot
> perform jobs that require contact with the public. And he
> should also have only occasional superficial contract [*sic*] with
> coworkers or supervisors. Should not be working in jobs that
> require team efforts. He should be performing solitary type
> tasks. And these should be performed in a[n] environment
> with a small number of workers, ideally 10 or less. And
> preferably if it could be on a late shift or an off shift so that
> there was you know, again, minimizing the contact with
> coworkers.

(Administrative Record at 74-75.) The vocational expert testified that under such limitations, Zwack could not perform his past relevant work. The vocational expert concluded that Zwack could, however, perform the jobs of a (1) cleaner (2,000 positions in Iowa and 200,000 positions in the nation), (2) poultry farm laborer (700 positions in Iowa and 38,000 positions in the nation), and (3) laundry worker (2,000 positions in Iowa and 140,000 positions in the nation). The ALJ also asked the vocational expert whether

---

[5] *See* Administrative Record at 60.

her answer would change if the individual needed to lie down during the day outside normal break times or lunch. The vocational expert responded that under such a limitation, Zwack would be precluded from competitive employment.

Zwack's attorney also questioned the vocational expert:

> Q: What if the hypothetical person needed to work at a slow pace due to their inability to focus, pay attention, paranoia, anxiety, to the degree that that would be at least a third of the work day[;] they couldn't perform at a regular pace, only a slow pace?
> A: I think that would preclude those jobs that I listed.
> Q: What if the hypothetical person were likely to miss a number of days at work. And would have a very difficult time getting to work most days up to a degree that they would miss more than four days of work a month. Would they be employable then?
> A: No.

(Administrative Record at 76.)

### C. Zwack's Medical History

On January 28, 2002, Zwack met with Dr. Dallas H. Bryant, Ed.D., for a psychological evaluation. Zwack informed Dr. Bryant that he suffered intense anxiety in group situations. Dr. Bryant diagnosed Zwack with social phobia and avoidant personality disorder. Dr. Bryant concluded that:

> [Zwack] lives with great discomfort in group social settings. . . . He indicated that he has no close friends at this time. . . . A series of behaviors were identified which collectively reveal personality features which are enduring in nature and interfere with the pleasant conduct of his life.

(Administrative Record at 323.) Dr. Bryant recommended psychological counseling and vocational counseling as treatment.

On February 24, 2004, Zwack met with Dr. Whealen M. Koontz, M.D., for a disability evaluation. Dr. Koontz noted that according to Zwack, he had 25 jobs since 1984. Zwack stated that he could not keep any jobs due to social anxiety. Dr. Koontz also

noted that Zwack complained of back pain as a result of lifting injuries he sustained while employed as a nurse's assistant. Dr. Koontz concluded that:

> Mr. Zwack is in good general health. His claim for disability relates to his social anxiety. I am not qualified to comment on that. Although he has had some back trouble, that would not preclude most forms of employment. The back pain sounds as though it is chiefly a myofascial strain. One would think that would respond to stretching exercises.

(Administrative Record at 337.)

On March 1, 2004, Dr. Janet S. McDonough, Ph.D., reviewed Zwack's medical records and provided Disability Determination Services ("DDS") with a Psychiatric Review Technique assessment for Zwack. Dr. McDonough diagnosed Zwack with depression and anxiety. Dr. McDonough determined that Zwack had the following limitations: mild restriction of activities of daily living, moderate difficulties in maintaining social functioning, and mild difficulties in maintaining concentration, persistence, or pace. Dr. McDonough concluded that:

> Mr. Zwack is able to understand, remember and carry out a variety of tasks and instructions. There is no evidence of deterioration in his cognitive functioning, which is probably at least average based on his past attainments. He has adequate stamina for an ordinary workday or workweek. He would function best in tasks that didn't require ongoing interaction with others. He does not require constant supervision. He maintains his hygiene and grooming adequately. He can travel in the community and has a driver's license. His judgment about ordinary hazards and necessary precautions is unimpaired. He can handle changes in routine within the above-noted constraints.
>
> There is no treating source statement. The evidence is internally consistent. The allegation and description of his functioning are generally believable, although the degree of functional limitation is not severe enough to be considered disabling for the purposes of this program.

(Administrative Record at 343.)

On August 16, 2006, Zwack was referred by DDS to Dr. Randal Watkins, Ph.D., and Joan Jacob, a licensed psychologist, for a mental status examination. Upon interview and examination, Dr. Watkins and Jacob diagnosed Zwack with panic disorder with agoraphobia, social phobia, generalized anxiety disorder, major depressive disorder, and dependancy traits. Dr. Watkins and Jacob assessed Zwack with a GAF score of 50. Dr. Watkins and Jacob summarized their evaluation as follows:

> [Zwack] has a long history of Panic Disorder, beginning his junior year of high school. He was a victim of sexual abuse for approximately 1-1/2 years by his high school counselor. [Zwack] has been unsuccessful in postsecondary training settings due to his anxiety conditions. He reports numerous job attempts; the longest job he held was for four years. . . . [Zwack] also reports two back injuries from employment as a CNA in 1998 and 1999. . . . He [] seems to be primarily confined to his residence at this time, financially supported by his sister and brother-in-law. Based on this interview and [Zwack's] history, he would be expected to remember and understand instructions, procedures, and locations. [Zwack's] attention, concentration, and pace would clearly be affected by his anxiety when around people, his fear about leaving his residence, and his panic while in public places. He may have some difficulty interacting appropriately with supervisors. He clearly would struggle to work with co-workers and the public, due to his social anxiety and panic. His use of judgment and response to changes in the workplace would also be affected by his intense anxiety and panic attacks.

(Administrative Record at 401.)

On August 25, 2006, Zwack was referred by DDS to Dr. John D. Kuhnlein, D.O., for a consultative examination. Dr. Kuhnlein noted that Zwack had four work-related back injuries between 1998 and 2000. According to Zwack, prolonged standing, lifting, pushing or pulling causes pain in his lower back and between his shoulder blades. Specifically, Dr. Kuhnlein noted that Zwack described his back problems as:

> waxing and waning centralized low back pain, which parallels his activity levels. There is no radiation into his legs. His

> back pain ranges between 1 and 8 on a 10-scale, and is usually
> 4/10. . . .

> Lifting, bending, prolonged standing more than 30 minutes and
> flexion at about 10 to 20 degrees while shaving makes his
> symptoms worse. Lying down, stretching and medication
> make his symptoms better.

(Administrative Record at 403.) Upon examination, Dr. Kuhnlein determined that Zwack could lift, push, pull, or carry up to 40 pounds occasionally. Dr. Kuhnlein offered no other limitations for Zwack, and opined that much of Zwack's disability "[a]ppears [to] derive[] from [] social phobia."[6]

On August 31, 2006, Dr. Laura Griffith, D.O., reviewed Zwack's medical records and provided DDS with an RFC assessment. Dr. Griffith determined that Zwack could: (1) occasionally lift and/or carry 50 pounds, (2) frequently lift and/or carry 25 pounds, (3) stand and/or walk with normal breaks for at least six hours in an eight-hour workday, (4) sit with normal breaks for a total of about six hours in an eight-hour workday, and (5) push and/or pull without limitations. Dr. Griffith also determined that Zwack could frequently climb, balance, stoop, kneel, crouch, and crawl. Dr. Griffith found no manipulative, visual, communicative, or environmental limitations.

On September 8, 2006, Zwack underwent a psychological evaluation performed by Dr. Don Damsteegt, Ph.D. Dr. Damsteegt noted that Zwack had "a longstanding history of difficulty with anxiety, specifically social phobia and lack of self confidence. . . . He has not been able to work consistently since high school and has not lived independently since about 1995."[7] Dr. Damsteegt administered two personality tests to Zwack. Dr. Damsteegt interpreted the test results as follows:

> [Zwack's] testing suggests that he probably is preoccupied
> with feelings of personal inadequacy and chronic feelings of

---

[6] *See* Administrative Record at 407.

[7] *Id.* at 420.

worthlessness and guilt. He is very sensitive to public humiliation and rejection. He appears to tolerate daily unhappiness and emptiness and to accept his feelings of worthlessness and guilt. He appears to have developed a self-perception of one who is unable to cope. There is also some evidence of bizarre thinking and some signs of loss of touch with reality. However, thought disorder is not the most prominent feature of his functioning. Depression and anxiety are more prominent. Nevertheless, there is a strong element of odd thinking in his responses, suggesting chronic and longstanding maladjustment.

While his pattern of answers have similarity to those of people who have suffered a major trauma and are currently suffering from posttraumatic stress disorder, his pattern of answers is more similar to people who have longstanding ineffective functioning that might be characterized as schizoid, avoidant or even schizotypal.

(Administrative Record at 421.) Dr. Damsteegt opined that Zwack's "possible diagnoses based on testing" were: schizoaffective disorder, posttraumatic stress disorder, dysthymic disorder, generalized anxiety disorder, social phobia, avoidant personality disorder, and schizoid personality disorder with depressive personality traits and schizotypal personality disorder features. Dr. Damsteegt assessed Zwack with a GAF score of 50.

On September 13, 2006, Dr. Rhonda Lovell, Ph.D., reviewed Zwack's medical records and provided DDS with a Psychiatric Review Technique and mental RFC assessment for Zwack. On the Psychiatric Review Technique assessment, Dr. Lovell diagnosed Zwack with major depressive disorder, generalized anxiety, and dependency traits. Dr. Lovell determined that Zwack had the following limitations: mild restriction of activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. On the mental RFC assessment, Dr. Lovell determined that Zwack was moderately limited in his ability to: maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances,

13

work in coordination with or proximity to others without being distracted by them, complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, get along with co-workers or peers without distracting them or exhibiting behavioral extremes, and respond appropriately to changes in the work setting. Dr. Lovell concluded that:

> Based on treatment records, history of some college, ADLs [("Activities of Daily Living")], [Zwack] is able to understand, remember and carry out simple and detailed tasks. [Zwack's] anxiety disorder interferes with socialization, but ADLs support [Zwack's] ability to interact appropriately with others on a superficial, time limited basis. Treatment records and ADLs suggest that [Zwack] has the ability to regularly complete a typical work week in a lower stress environment with some moderate interruptions.

(Administrative Record at 442.)

On January 31, 2007, Dr. Dee Wright, Ph.D., reviewed Zwack's medical records and provided DDS with a Psychiatric Review Technique and mental RFC assessment for Zwack. On the Psychiatric Review Technique assessment, Dr. Wright diagnosed Zwack with major depressive disorder, dysthymia, anxiety disorder, panic disorder with agoraphobia, social phobia and mixed personality disorder with dependent, avoidant, and schizotypal features. Dr. Wright determined that Zwack had the following limitations: mild restriction of activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. On the mental RFC assessment, Dr. Wright determined that Zwack was moderately limited in his ability to: maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, work in coordination with or proximity to others without being distracted by them, complete a normal workday and workweek without interruptions from

14

psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, get along with co-workers or peers without distracting them or exhibiting behavioral extremes, and respond appropriately to changes in the work setting.

In Zwack's 2008 Annual Assessment from the Abbe Center for Community Mental Health in Cedar Rapids, Iowa, Karen Penick, LISW, Zwack's treating therapist, noted that Zwack continued to suffer from paranoia. Specifically, Penick explained that Zwack reported "problems with thinking people are always watching him or talking about him."[8] Penick also noted that Zwack experiences extreme anxiety and panic attacks "when he is around groups of people. He also becomes extremely anxious when he experiences any new situation. He reports some depression, which he thinks is secondary to the constraints on his life because of the social phobia."[9] Penick diagnosed Zwack with social phobia and panic disorder with agoraphobia. Penick assessed Zwack's GAF score at 50.

## V. CONCLUSIONS OF LAW

### A. ALJ's Disability Determination

The ALJ determined that Zwack is not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations. *See* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Page v. Astrue*, 484 F.3d 1040, 1042 (8th Cir. 2007); *Anderson v. Barnhart*, 344 F.3d 809, 812 (8th Cir. 2003). The five steps an ALJ must consider are:

> (1) whether the claimant is gainfully employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets the criteria of any Social Security Income listings,

---

[8] *See* Administrative Record at 510.

[9] *Id.*

> (4) whether the impairment prevents the claimant from performing past relevant work, and (5) whether the impairment necessarily prevents the claimant from doing any other work.

*Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (citing *Eichelberger*, 390 F.3d at 590); *see also* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (citing *Goff*, 421 F.3d at 790, in turn quoting *Eichelberger*, 390 F.3d at 590-91).

In order to establish a disability claim, "the claimant bears the initial burden to show that [he or] she is unable to perform [his or] her past relevant work." *Beckley v. Apfel*, 152 F.3d 1056, 1059 (8th Cir. 1998) (citing *Reed v. Sullivan*, 988 F.2d 812, 815 (8th Cir. 1993)). If the claimant meets this burden, the burden of proof then shifts to the Commissioner to demonstrate that the claimant retains the residual functional capacity ("RFC") to perform a significant number of other jobs in the national economy that are consistent with claimant's impairments and vocational factors such as age, education, and work experience. *Id.* The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. §§ 404.1545, 416.945. "It is 'the ALJ's responsibility to determine [a] claimant's RFC based on all the relevant evidence, including medical records, observations of treating physicians and others, and [the] claimant's own description of her limitations.'" *Page*, 484 F.3d at 1043 (quoting *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995)); 20 C.F.R. §§ 404.1545, 416.945.

The ALJ applied the first step of the analysis and determined that Zwack had not engaged in substantial gainful activity since December 9, 2003. At the second step, the ALJ concluded from the medical evidence that Zwack had the following severe combination of impairments: psoriasis, back pain, and social phobia. At the third step, the ALJ found that Zwack did not have an impairment or combination of impairments

listed in "20 C.F.R. [§] 404, [Appendix 1, Subpart P, Regulations No. 4 (the Listing of Impairments)]." At the fourth step, the ALJ determined Zwack's RFC as follows:

> [Zwack] has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except for being unable to have contact with the public. He can have superficial contact with coworkers and supervisors and should not work in occupations that require team efforts. He should work with 10 coworkers or less, work the late or off shift and minimize contact with coworkers. He would need to take one or two unscheduled breaks of 15 minutes duration, once or twice a week.

(Administrative Record at 22.) Also at the fourth step, the ALJ determined that Zwack could not perform any of his past relevant work. At the fifth step, the ALJ determined that based on his age, education, previous work experience, and RFC, Zwack could work at jobs that exist in significant numbers in the national economy. Therefore, the ALJ concluded that Zwack was not disabled.

## B. Objections Raised By Claimant

Zwack argues that the ALJ erred in three respects. First, Zwack argues that the ALJ failed to consider pertinent objective medical evidence when determining whether he was disabled. Second, Zwack argues that the ALJ's decision is not supported by substantial medical evidence from an examining source. Lastly, Zwack argues that the ALJ failed to properly consider his subjective complaints of disability.

### 1. Medical Evidence[10]

Zwack argues that the ALJ failed to properly consider all of the evidence in the record. Zwack maintains that the ALJ ignored or overlooked substantial evidence relating to his assessed GAF scores of 53 or lower between May 2006 and August 2008.[11] Zwack

---

[10] Zwack's first and second arguments are closely related. Therefore, the Court will consider both arguments together.

[11] Global Assessment of Function (GAF) is a "numeric scale (0 through 100) used (continued...)

contends that his GAF scores between May 2006 and August 2008, show a mental impairment of a "serious" degree. Thus, Zwack argues that by failing to properly consider the evidence of his GAF scores, the ALJ failed to fully and fairly develop the record with regard to his mental impairments.

In her decision, the ALJ offers little discussion of Zwack's GAF scores. The ALJ simply notes that "[Zwack] was also given a GAF of 47 in [a] 2006 examination."[12] The ALJ found the GAF score "inconsistent with the treatment notes of record."[13] Having reviewed the entire record, the Court determines that the ALJ's finding that Zwack's 2006 GAF score of 47 is "inconsistent with the treatment notes of record" is wrong. The record demonstrates that between May 2006 and August 2008, Zwack's GAF scores ranged between 47 and 53.[14] Significantly, four separate doctors, two treating sources and two examining sources, on 20 different occasions between May 2006 and August 2008, assessed Zwack with a GAF score of 53 or lower.

---

[11](...continued)
by mental health clinicians and physicians to subjectively rate the social, occupational and psychological functioning of adults, e.g., how well or adaptively one is meeting various problems-in-living." *See* Global Assessment of Functioning at http://en.wikipedia.org/wiki/Global_Assessment_of_Functioning.

[12] *See* Administrative Record at 27.

[13] *Id.*

[14] *See* Administrative Record at 373 (GAF score of 47 in May 2006), 402 (GAF score of 50 in August 2006), 422 (GAF score of 50 in September 2006), 426 (GAF score of 50 in August 2006), 450 (GAF score of 47 in August 2006), 451 (GAF score of 47 in November 2006), 505 (GAF scored of 49 in August 2008), 507 (GAF score of 47 in July 2008), 508 (GAF score of 47 in June 2008), 511 (GAF score of 50 in April 2008), 512 (GAF score of 47 in April 2008), 513 (GAF score of 47 in January 2008), 515 (GAF score of 53 in October 2007), 516 (GAF score of 47 in October 2007), 518 (GAF score of 52 in September 2007), 520 (GAF score of 50 in August 2007), 521 (GAF score of 47 in July 2007), 524 (GAF score of 50 in July 2007), 528 (GAF score of 47 in May 2007), and 529 (GAF score of 47 in January 2007).

The Court is troubled by the ALJ's failure to consider or discuss Zwack's GAF scores from May 2006 to August 2008. A GAF score is a determination based on a scale of 1 to 100 of a "clinician's judgment of the individual's overall level of functioning." *Hudson ex rel. Jones v. Barnhart*, 345 F.3d 661, 662 n.2 (8th Cir. 2003) (quoting *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. Text Revision 2000)). The Eighth Circuit Court of Appeals has noted that a GAF score between 41 and 50 "reflects *serious limitations* in the patient's general ability to perform basic tasks of daily life." *Brueggemann*, 348 F.3d at 695 (emphasis added). A GAF score of 51 to 60 is "indicative of 'moderate symptoms' or 'moderate difficulty in social, occupational, or school functioning.'" *Lacroix v. Barnhart*, 465 F.3d 881, 883 (8th Cir. 2006) (quotation omitted). In *Pate-Fires v. Astrue*, 564 F.3d 935, 944 (8th Cir. 2009), the Eighth Circuit found that a GAF score in the 51-60 range was not "inconsistent with [an] opinion that [the claimant] was permanently disabled for any type of employment, nor does it constitute substantial evidence supporting the ALJ's conclusion she is not disabled." *Id.* (citing *Colon v. Barnhart*, 424 F. Supp. 2d 805, 813-14 (E.D. Pa. 2006) ("indicating an ALJ must consider a claimant's total GAF score history, and remanding the case for reconsideration where ALJ failed to consider or discuss claimant's lowest scores[.]")).

Here, Zwack's GAF scores, in the period from May 2006 to August 2008, ranged between 47 and 53. Such scores represent "serious" and "moderate" symptoms which effect Zwack's ability to perform basic tasks of daily life and cause difficulty in social and occupational functioning. *See Lacroix*, 465 F.3d at 883; *Brueggemann*, 348 F.3d at 695. The Court bears in mind that an ALJ has a duty to develop the record fully and fairly. *Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007); *Sneed v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004); *Wilcutts v. Apfel*, 143 F.3d 1134, 1137 (8th Cir. 1998). Because an administrative hearing is a non-adversarial proceeding, the ALJ must develop the record fully and fairly in order that "'deserving claimants who apply for benefits receive justice.'" *Wilcutts*, 143 F.3d at 1138 (quoting *Battles v. Shalala*, 36 F.3d 43, 44 (8th Cir. 1994)).

Because the ALJ failed to address or consider the totality of Zwack's GAF scores from May 2006 to August 2008, the Court finds that the ALJ failed to fully and fairly develop the record with regard to Zwack's mental impairments. Therefore, remand is necessary. *See Pate-Fires v. Astrue*, 564 F.3d at 944 (citing *Colon*, 424 F. Supp. 2d at 813-14 for the proposition that remand is necessary when an ALJ fails to consider or discuss a claimant's GAF scores).

On remand, the ALJ shall fully and fairly develop the record with regard to Zwack's GAF scores between May 2006 and August 2008. Specifically, the ALJ must consider Zwack's limitations in light of the level of functioning for GAF scores between 47 and 53 as discussed in the *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. Text Revision 2000). *See Brueggemann*, 348 F.3d at 695; *Hudson ex rel. Jones*, 345 F.3d at 662 n.2. Additionally, because the ALJ primarily relied on medical opinions which either pre-dated May 2006, or failed to address Zwack's GAF scores for the pertinent time period, the Court determines that the ALJ should order a new consultative examination of Zwack as to his mental impairments.[15] *See Barrett v. Shalala*, 38 F.3d 1019, 1023 (8th Cir. 1994) (medical examinations and tests may be ordered when the medical records presented to the ALJ constitute insufficient medical evidence to determine whether the claimant is disabled).

### 2. *Credibility Determination*

Zwack argues that the ALJ failed to properly evaluate his subjective allegations of disability. Zwack maintains that the ALJ's credibility determination is not supported by substantial evidence. The Commissioner argues that the ALJ properly considered Zwack's testimony and properly evaluated the credibility of his subjective complaints.

---

[15] The ALJ primarily supports her decision by giving great weight to a non-examining consultative physician who rendered an opinion in 2004. *See* Administrative Record at 27.

When assessing a claimant's credibility, "[t]he [ALJ] must give full consideration to all the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; [and] (5) functional restrictions." *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). The absence of objective medical evidence to support a claimant's subjective complaints is also a relevant factor for an ALJ to consider. *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001) (citation omitted). The ALJ, however, may not disregard a claimant's subjective complaints "solely because the objective medical evidence does not fully support them." *Polaski*, 739 F.2d at 1322; *see also Dukes v. Barnhart*, 436 F.3d 923, 928 (8th Cir. 2006) ("In discrediting subjective claims, the ALJ cannot simply invoke *Polaski* or discredit the claim because they are not fully supported by medical evidence.").

Instead, "'[a]n ALJ may discount a claimant's subjective complaints only if there are inconsistencies in the record as a whole.'" *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008) (quoting *Porch v. Chater*, 115 F.3d 567, 572 (8th Cir. 1997)); *see also Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) ("The ALJ may not discount a claimant's complaints solely because they are not fully supported by the objective medical evidence, but the complaints may be discounted based on inconsistencies in the record as a whole."). If an ALJ discounts a claimant's subjective complaints, he or she is required to "'detail the reasons for discrediting the testimony and set forth the inconsistencies found.'" *Ford v. Astrue*, 518 F.3d 979, 982 (8th Cir. 2008) (quoting *Lewis v. Barnhart*, 353 F.3d 642, 647 (8th Cir. 2003)); *see also Baker v. Apfel*, 159 F.3d 1140, 1144 (8th Cir. 1998) ("When rejecting a claimant's complaints of pain, the ALJ must make an express credibility determination, must detail reasons for discrediting the testimony, must set forth inconsistencies, and must discuss the *Polaski* factors."). Where an ALJ seriously

considers, but for good reason explicitly discredits a claimant's subjective complaints, the Court will not disturb the ALJ's credibility determination. *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001) (citing *Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996)); *see also Guilliams*, 393 F.3d at 801 (explaining that deference to an ALJ's credibility determination is warranted if the determination is supported by good reasons and substantial evidence); *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003) ("If an ALJ explicitly discredits the claimant's testimony and gives good reasons for doing so, we will normally defer to the ALJ's credibility determination."). "'The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts.'" *Wagner*, 499 F.3d at 851 (quoting *Pearsall*, 274 F.3d at 1218).

In her decision, the ALJ determined that:

> The evidence of record reveals [Zwack] quit his job prior to his application for disability benefits, was able to attend x-ray school after the alleged onset and performed well until dismissed, although [Zwack] denied this, and has applied for jobs after the onset date. He was able to supervise his sister's children by himself and indicated this prevented him from looking for work. He was also able to go to Wal-Mart with his sister and niece, file for Social Security benefits at the field office and attend church during the week. However, [Zwack] denied this at the hearing. He has not taken his medication as prescribed and did poorly during those times. Also, he has not actively participated in therapy at times. He has not been compliant with treatment or taking medication. A MMPI and MCMI suggested [Zwack] magnified his illness. Most of [Zwack's] panic attacks are at night with only one or two a week occurring during the day. He does have significant problems dealing with people, but he is not totally credible in this regard, given the evidence previously discussed. . . . [T]he level of back pain alleged by [Zwack] is not supported by the medical record. There is no evidence that [Zwack's] symptoms interfered with his ability to maintain the pace required to maintain employment, as alleged by his attorney. . . . There was no diagnostic test that corroborated

[Zwack] had back pain of the degree alleged. There was no indication of neurological, sensory or motor deficits that could be related to a back impairment. No treating or examining medical professional stated that [Zwack] would have any disabling limitations as a result of psoriasis or back pain. [Zwack] did not require any hospitalizations or emergency room admissions to treat his impairments. [Zwack's] allegations and the objective evidence are contradictory and detract from [Zwack's] credibility. This evidence persuades the undersigned that [Zwack's] allegations are not fully credible.

(Administrative Record at 24-25.)

While it is clear from the ALJ's decision that she considered and discussed Zwack's treatment history, medical history, and functional restrictions in making her credibility determination, her conclusions are not based on consideration of all the relevant medical evidence, and contain factual errors. First, the ALJ's finding that Zwack attended x-ray school after his alleged disability onset date is incorrect. Zwack attended x-ray school from 1992 through 1994, long before his alleged disability onset date.[16] Second, even if Zwack applied for jobs after his alleged disability onset date, the ALJ failed to address whether if Zwack could find a job, he could hold it for a significant period of time. The Eighth Circuit Court of Appeals has made clear that applying for a job or having the ability to physically perform a particular job does not mean that an individual is able to engage in substantial gainful activity, the individual must also be able to "'hold whatever job he finds for a significant period of time.'" *Dix v. Sullivan*, 900 F.2d 135, 138 (8th Cir. 1990) (quoting *Singletary v. Bowen*, 798 F.2d 818, 822 (5th Cir. 1986)); *see also Tennant v. Schweiker*, 682 F.2d 707, 710-11 (8th Cir. 1982) (reversing the denial of benefits where the claimant, who suffered from a personality disorder, held 46 jobs in 12 years). Zwack

---

[16] *See* Administrative Record at 174, 423.

held 33 different jobs in 23 years, and 18 different jobs from 2000 to 2006.[17] Third, and most significantly, the focus of the ALJ's credibility determination as to Zwack's medical history was on his allegations of back pain. The ALJ made no mention of Zwack's mental health medical history. As discussed in section *V.B.1* of this Ruling, the Court remanded this matter for further consideration and development of the record with regard to Zwack's mental health history, particularly his GAF scores from 2006 through 2008. Therefore, in addition to her incorrect finding as to Zwack's attendance at x-ray school and her failure to address whether Zwack could hold a job for a significant period of time, the Court finds that the ALJ's credibility determination is also inadequate because the ALJ did not properly consider Zwack's mental health history in making her credibility determination. Therefore, because the ALJ's decision lacks full consideration of all of the relevant medical and non-medical evidence, the Court determines that remand is appropriate for the ALJ to further develop the record with regard to Zwack's credibility. On remand, the ALJ shall set forth in detail her reasons for finding Zwack's subjective allegations to be credible or not credible. If on remand, the ALJ finds Zwack's testimony not to be credible, the ALJ shall fully explain the reasons for her credibility determination and fully explain the inconsistencies between Zwack's subjective allegations and the evidence in the record.

## C. *Reversal or Remand*

The scope of review of the Commissioner's final decision is set forth in 42 U.S.C. § 405(g) which provides in pertinent part:

> The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with our without remanding the cause for a rehearing.

42 U.S.C. § 405(g). The Eighth Circuit Court of Appeals has stated that:

---

[17] *See* Administrative Record at 254, 400.

> Where the total record is overwhelmingly in support of a finding of disability and the claimant has demonstrated his [or her] disability by medical evidence on the record as a whole, we find no need to remand.

*Gavin v. Heckler*, 811 F.2d 1195, 1201 (8th Cir. 1987); *see also Beeler v. Brown*, 833 F.2d 124, 127 (8th Cir. 1987) (finding reversal of denial of benefits was proper where "the total record overwhelmingly supports a finding of disability"); *Stephens v. Sec'y of Health, Educ., & Welfare*, 603 F.2d 36, 42 (8th Cir. 1979) (explaining that reversal of denial of benefits is justified where no substantial evidence exists to support a finding that the claimant is not disabled). In the present case, the Court concludes that the medical records as a whole do not "overwhelmingly support a finding of disability." *Beeler*, 833 F.2d at 127. Instead, the ALJ simply failed to fully and fairly develop the record with regard to Zwack's mental impairments, and failed to provide adequate reasons for rejecting Zwack's subjective allegations of disability. Accordingly, the Court finds that remand is appropriate.

## VI. CONCLUSION

The Court concludes that this matter should be remanded to the Commissioner for further proceedings. On remand, the ALJ shall develop the record fully and fairly with regard to Zwack's mental impairments. Specifically, the ALJ must consider Zwack's limitations in light of the level of functioning for GAF scores between 47 and 53 as discussed in the *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. Text Revision 2000). The ALJ must also order a new consultative examination for Zwack as to his mental impairments. Lastly, the ALJ must also consider all of the evidence relating to Zwack's subjective allegations of disability, address her reasons for crediting or discrediting those allegations, and properly apply the *Polaski* factors when determining Zwack's credibility.

## *VII.  ORDER*

For the foregoing reasons, it is hereby **ORDERED**:

This matter is **REVERSED** and **REMANDED** to the Commissioner of Social Security pursuant to sentence four of 42 U.S.C. § 405(g), for further proceedings as discussed herein.

DATED this 27th day of May, 2010.

JON STUART SCOLES
UNITED STATES MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA